CASPER WALTERMAN et al., Appellees, v. NEILS WALTERMAN
et al., Appellants.

**WILLS: Construction—Right to Take Devise at Testamentary Valuation.** A testamentary declaration that an estate shall be divided *"in equal* parts*"* among several named children of testator will not prevail over a subsequent and definite provision to the effect that certain of the children shall have the right to take specified tracts at specified valuations, even though the valuations named in the will are *very much less* than the value of the land when the will became effective by the death of the testator.

*Appeal from Lyon District Court.*—C. C. BRADLEY, Judge.

FEBRUARY 14, 1922.

SUIT in partition of lands. The parties to the suit all take their title under the will of Klaas Walterman, deceased, and the only issue presented is a question of construction of the will. The construction adopted by the trial court was adverse to the claims of some of the parties, and they have appealed.—*Affirmed.*

*Edwards, Longley, Ransier & Harris,* for appellants.

*Willoughby, Strack & Sieverding* and *J. V. Gregory,* for appellees.

EVANS, J.—Item 2 of the will was as follows:
"All the rest, residue and remainder of my estate real, personal and mixed of which I may die seized and possessed or to which I may be entitled, I will, devise and bequeath as follows:
"1. If my beloved wife Katie Walterman is living at the time of my death, then in that case I will, devise and bequeath my entire estate real and personal to her during her natural lifetime, with full power to enjoy the possession and have and use the entire income from my entire estate, and with the further power to sell or exchange any of the personal property of my estate, being responsible only to my estate for the proceeds of

such sales or exchanges; this devise and bequeath to my wife being in lieu of all her statutory rights in and to my estate.

"2. After the death of my beloved wife Katie Walterman, I direct and will that my entire estate be divided in equal parts among my seven children, Henry Walterman, George Walterman, Casper Walterman, Neals Walterman, Klaas Walterman, Grace Walterman, and Hattie Walterman Wiltfang (wife of Harry Wiltfang), or if any of said children be dead then to the heirs of said deceased child; which division shall be made one year after the death of my wife Katie Walterman if she survive me, and within one year after my death if my wife, Katie Walterman does not survive me and shall be divided among my said seven children in the following manner to wit: As I have already made advances to my son Henry Walterman of the sum of two thousand ($2,000) dollars, and to my son George Walterman of the sum of sixteen hundred ($1,600) dollars, I direct that said sums be added to the estate of which I or my wife dies seized or possessed in order to determine the amount belonging to each child herein provided, and when so determined the amount of advances made to Henry Walterman shall be deducted from the amount otherwise to be found due him, and the advances made to George Walterman shall be deducted from the amount that would otherwise be due him; that in dividing the real estate belonging to my estate, I hereby will, and devise and direct that my son Casper Walterman shall have the south half of the northeast quarter (S½ of NE¼) of Section twenty-three (23) Township 89 Range 16 Grundy County, Iowa, to be and remain his forever but at the agreed valuation of $88 per acre or the sum of $7,040 which land said Casper is to accept at said valuation of $7,040 and if said amount exceeds his interest in my estate he shall pay to my estate any excess which said $7,040 may be over his rightful share; and in making division of my estate I also direct and will that my son Klaas Walterman shall have the north half (N½) of the northeast quarter (NE¼) of said Section twenty-three (23) Township 89 Range 16 Grundy County, Iowa, the same to be and remain his forever but to be accepted by him at the valuation of $88 per acre or $7,040, and if said sum of $7,040 is more than said Klaas Walterman's share of my estate as pro-

vided in this will, then in that case he shall pay to my estate all excess that said $7,040 may be over his rightful share of my estate; and in dividing my estate I further will, direct and devise to my daughter Grace Walterman the east half (E½) of the southeast quarter (SE¼) of Section fourteen (14) Township 89 Range 16 Grundy County, Iowa, the same to be and remain hers forever, but shall be accepted by her at the valuation of $70 per acre or the sum of $5,600 and if said sum of $5,600 should exceed my daughter Grace's share of my estate as herein provided then in that event she is to pay to my estate all sum which $5,600 may be in excess of her rightful share of my estate.

"I further direct that if the land herein specifically devised to my two sons Casper and Klaas and to my daughter Grace does not at the valuation placed on said land equal their equal share of my estate as herein provided, then each of them shall receive out of my estate so much thereof as will, together with the valuation of said land herein described equal their full share of my estate as provided herein.

"3. In case my beloved wife Katie Walterman is not living at the time of my death, then I direct that my entire estate be divided among my seven children and as provided in Paragraph two (2) of Item (2) herein, the same to be divided one year after my death, and to be and remain theirs absolutely according to the provisions of said Paragraph two of this item."

The controversy centers upon Clause 2 of the foregoing Item 2 of the will. It will be noted that such Clause 2 provides for an equal distribution of the residuary estate among the seven children in a certain manner later prescribed therein. Such manner of division later prescribed provides specific devises of 80 acres to each of three children with the prescribed valuation charged against such devisee in each case. It appears from the record that the land thus specifically devised has a much greater value at the present time and at the time of the death of the testator than the valuation stated in the will, though such stated value was the true value at the time the will was executed. Against the devisees of this specific property the other devisees contend that the specific property so devised should be charged against them at actual present value, and not at the valuation fixed in the will. This contention is

resisted by the devisees of the specific property, and they demand the right to take the property upon the valuation fixed in the will. The trial court sustained their claim of right in this regard, and awarded to them the specific property devised to each, and charged them with the valuation stated in the will. The other devisees have appealed.

The appellants base their contention upon the broad proposition that, where there is repugnancy in the clauses of a will, it will be construed so as to give effect to the main and dominant intention of the testator, as indicated by the will, and so as to reject the secondary and subsidiary intention expressed therein, where such is repugnant to the main intent. The general rule thus contended for by appellants is easier stated than applied. The first difficulty in its application is to determine what is the main and dominant intention expressed therein and what is incidental and subsidiary only. The general rule under consideration is stated in Cyc. as follows:

"In case of doubt, a will should be construed in favor of a general or primary intention, rather than a particular or secondary one; and where, in such a case, a particular intention, or particular terms, as expressed in some part of the will, are inconsistent with and repugnant to the testator's general intention, as ascertained from all the provisions of the will, the general intention must prevail. But this rule does not apply where there is a clearly expressed intention to effect another purpose distinct and different from the general intention or object; as in such a case, the particular intention will prevail." 40 Cyc. 1393.

The appellants contend that the dominant intention expressed in this will is that there shall be equality among the testator's children in the division of the estate; and that, whereas the later provisions become effective to destroy such equality, they become repugnant, and must be rejected. The initial question before us is, therefore: Where is the emphasis of this Clause 2 of Item 2? It will be noted that the material part of Clause 2 is contained in one long sentence, covering nearly two printed pages. Appellants find the emphasis in the first eight lines thereof, ending with the first semicolon. These lines provide for a division in "equal parts." If these lines are to have

unqualified effect, then no effect can be given to any of the provisions which follow the first semicolon therein. The provision for equality is found here, and nowhere else. Shall we say, therefore, that, when the testator had reached this semicolon, he had fully disclosed his dominant intention, and that it was not subject to any qualification by any later provision? It will be noted that every provision made later in the same sentence of the will does add some qualification to the thought of absolute equality. We are unable to say that the emphasis is to be found in the opening utterances of this clause, rather than in the specific qualifications later made. The provision as to advancements and the charging up of the same against two of the children is a qualification of the opening statement. The same is true of the specific devises of the real estate. After a careful reading, we are impressed that the real intent of the testator stands out quite clearly in the terms of the will, and that there is no necessary repugnancy between them. After the first semicolon, the will provides that the property "shall be divided among my seven children in the following manner, to wit." The "following manner" is clearly set forth, and leaves little room for debate, unless it be said that it must all be rejected, because of the repugnancy to the opening lines. In providing that the advancements to Henry and George of $2,000 and $1,600, respectively, should be added to his estate for the purpose of a division, and should thereafter be charged respectively against the quotients of Henry and George, the testator was, for the purpose of his will, setting forth the construction of a hypothetical estate, which was to serve as the dividend in the process of division. Likewise, in making the specific devises of property and charging them against the devisees at a stated valuation, he was still setting forth his hypothetical dividend. The specified amounts were to be included in the hypothetical estate for the purpose of division, and were to be charged against the quotients of the respective devisees. These specific devises of real estate, to be taken by the devisees at a fixed charge or valuation, were analogous to an equitable conversion. They reduced these parcels of real estate to personalty, for the purpose of distribution. They were made to disappear as real estate from the testator's dividend, and the amounts of the specified valuations were sub-

stituted in such dividend therefor. To put it in another way, the testator put his estate into the hands of his executor in the converted form here indicated, and in that form directed an equal division thereof.

We think this is the fair and plain purport of Clause 2, as written. If this construction were otherwise doubtful, it finds significant confirmation in Clause 3. At the time of the execution of the will, the testator was confronted with two contingencies: (1) That his wife would survive him; (2) that his wife would not survive him. The will was drawn with reference to both contingencies. The second contingency happened. The third clause was drawn with special reference to such second contingency. The word "equal" does not appear in this paragraph. It provides for a division "as provided in Paragraph 2 of Item 2 herein," and "according to the provisions of said Paragraph 2 of this item." The form of this clause negatives the idea that absolute equality was the dominant provision of the will.

This was the conclusion reached by the trial court, and decree was entered accordingly. It is now—*Affirmed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.